Paul A. and Gladys Gorin v. Commissioner.
Gorin v. Commissioner
Docket No. 3817-66.
United States Tax Court
T.C. Memo 1968-57; 1968 Tax Ct. Memo LEXIS 242; 27 T.C.M. (CCH) 315; T.C.M. (RIA) 68057; April 4, 1968. Filed Lester H. Salter and James R. McGowan, 146 Westminster St., Providence, R.I., for the petitioners. Lawrence A. Wright, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1961 of $13,678.14, and additions to tax for fraud under section 6653(b), I.R.C. 1954 of $6,839.07, and for underpayment of estimated tax under section 6654(a), I.R.C. 1954, of $108.89. At issue is whether petitioner Paul A. Gorin, a lawyer, received a cash payment in 1961 of *243 $28,500 as part of his fee for handling a tax fraud case which should have been reported in full in his income for that year. The Commissioner has conceded that $5,000 of this sum was in fact reported on petitioner's return, leaving for consideration the question whether an additional $23,500 was ever received by Gorin, and if so whether all or any part thereof was properly includible in his gross income. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by reference. Petitioners Paul A. and Gladys Gorin are husband and wife. During the taxable year and at the time the petition herein was filed their residence was at 20 Risley Road, West Newton, Massachusetts. They filed their joint Federal income tax return for 1961 with the district director of internal revenue for the district of Massachusetts. Petitioner Gladys Gorin is a party to this proceeding only by reason of having filed a joint income tax return for 1961 with Paul A. Gorin. At all times material hereto, petitioners kept their accounts and filed their Federal income tax returns on the cash basis and their taxable year was the calendar year. In 1961, petitioner Paul *244 A. Gorin (hereinafter sometimes referred to as Gorin) was engaged in the practice of law in Boston, Massachusetts, and specialized in Federal taxation. Sometime prior to December 30, 1960 Gorin was "contacted" relative to his representing Nathaniel Bergman, an attorney from Hartford, Connecticut, in a tax fraud case. Thereafter, Gorin undertook to represent Bergman before the Internal Revenue Service. On January 12, 1961 Gorin entered on his books and records receipt of a retainer check in the amount of $5,000 dated December 30, 1960 payable to Paul Gorin and drawn by Nathaniel Bergman. This was the only money paid 316 by Bergman to Gorin prior to June 27, 1961, and was reported by Gorin on his 1961 income tax return. A recommendation that Bergman and his wife be criminally prosecuted for income tax evasion was under consideration in the Boston office of the Regional Counsel, Internal Revenue Service, in June 1961. Saul Glassman, a Boston attorney in general practice with some specialization in real estate matters whose office was near Gorin's, informed Gorin that he (Glassman) had a good friend in the Enforcement Branch of the Regional Counsel's office. Glassman was the commanding *245 officer of a U.S. Marine Corps Reserve voluntary training unit, and in that capacity had become acquainted with Charles J. McCaffrey, next in command of the unit. At that time, McCaffrey was head of the Enforcement Branch of the Boston Regional Counsel's office wherein lay the duty on review to recommend for or against criminal prosecution in Federal tax cases arising in New England. From June 1961, Glassman became associated with Gorin in the handling of the Bergman tax fraud case, with Bergman's consent. As between Gorin and Glassman, it was agreed that they would share equally in any fee paid by Bergman for the handling of his case. On June 20, 1961, Gorin, Glassman and Bergman met in a Worcester, Massachusetts restaurant and, after extended negotiations, orally agreed that Bergman would pay a fee of $75,000. Gorin agreed to give Bergman a credit of $5,000 for the retainer previously received by him, leaving $70,000 still to be paid. It was also tentatively agreed at this time, at the insistence of Gorin and Glassman, that Bergman would pay $25,000 of this amount in cash, and the remaining $45,000 with two checks, one for $15,000 payable in the event that the Boston Regional *246 Counsel's office recommended against criminal prosecution in Bergman's tax fraud case, and the other for $30,000 payable in the event of a favorable final decision from the National Office of the Internal Revenue Service in Washington, D.C. However, Glassman subsequently insisted that the cash portion of the fee be increased by $3,500, and in telephone conversations during the following week between Bergman and Gorin and between Bergman and Glassman, it was finally decided that the cash payment would be $28,500, and that the two checks would be reduced to the amounts of $12,500 and $29,000, respectively, with the total sum to be paid remaining at $70,000. By pre-arrangement, Bergman appeared at Gorin's office on the morning of June 27, 1961, bringing with him $28,500 in cash and drafts of two written agreements dealing with the two checks in the amounts of $12,500 and $29,000, respectively. After being modified in some respects in gorin's office, both agreements were signed. The agreements were between Nathaniel Bergman, referred to in the agreement as the "client" and Paul Gorin, referred to as the "attorney." The first agreement provided that "for a valuable consideration and for *247 other value to be paid by said client to said attorney," Bergman would deliver to Gorin the sum of $12,500, which Gorin agreed "to hold * * * in trust * * * in a separate special Trustee account with an official banking institution." The agreement then provided, in part, that: 3. Said attorney agrees to represent said client in a tax matter pending before U.S.Treasury Department, Internal Revenue Service, Regional Counsel's office, at Boston, Massachusetts; and said attorney shall render all services required on said matter; and do, make and take any and all action necessary in the defense of said client. 4. If and when said Regional Counsel's Office or its representatives should approximately and officially decide or determine that said client's alleged tax matter is simply and purely one of an alleged civil nature and not otherwise, then and then only upon the aforesaid civil determination, shall said attorney as trustee of said fund, be and is authorized to receive or use or apply the same as compensation for services rendered for said attorney's employment. 5. If, after a reasonable time from date hereof, said attorney has been unsuccessful in his hiring or efforts, to thusly *248 obtain a determination that said client has only an alleged civil tax liability under the U.S.Revenue law at the aforesaid Regional Counsel's department, the said trust fund of $12,500 shall be returned and redelivered to said client thereafter at once. Under the terms of the second agreement, Bergman agreed to deliver to Gorin the sum of $29,000, which Gorin also agreed to deposit in a trustee account. This agreement provided, in part, that: 1. Said attorney is employed to represent said client on a tax matter before U.S.Treasury Dept., Internal Revenue 317 Service, and its legal departments; and as such shall employ himself diligently, competently, and effectively to defend said client. * * * 4. If and when said U.S.Treasury Department or Internal Revenue Service or its legal divisions shall finally conclude and determine that said client's alleged tax matter is simply and solely an alleged civil tax matter and not otherwise, then only shall said Trustee and attorney be and is hereby authorized to use, receive and apply said fund for compensation in full for services rendered to said client. 5. If after a reasonable time said attorney has been unsuccessful and failed *249 in his efforts to obtain the aforesaid determination and conclusion that said client has only an alleged civil tax matter under the U.S.Revenue laws, then said trust fund of TWENTY-NINE THOUSAND ($29,000) DOLLARS shall be returned and redelivered to said client thereafter at once. * * * 6. Said attorney further agrees as a part of his employment herein, and without any additional payment for said attorney's services to said client, to represent or defend said client in any civil tax proceedings or litigation to the conclusion thereof for any alleged civil tax liability. The client shall furnish him with an accountant to do the necessary accounting services therefore (sic). Two checks were drawn by Bergman in Gorin's office, one in the amount of $12,500 and one in the amount of $29,000, both payable to "Paul A. Gorin, attorney and Trustee, per agreement of even date between payee and maker, both dated June 27, 1961." Both checks were deposited in a trustee account in the names of Gorin and his brother, attorney Oscar Gorin, in the New England Merchants National Bank, Boston, Massachusetts. It was understood by Bergman, Gorin and Glassman that at least a portion of the $28,500 *250 in cash was to be used as a bribe for McCaffrey in return for a Criminal Action Memorandum (CAM) recommending against prosecution of Bergman. After a visit by Bergman and Gorin to Glassman's office around noon of June 27, 1961 to assure Glassman that Bergman had brought the cash, Bergman delivered the cash to Gorin, who refused to give any receipt therefor. Later that same day, June 27, 1961, Glassman gave McCaffrey $5,000 in bills in return for a rough draft of a criminal action memorandum purporting to recommend against prosecution of Bergman for tax evasion, and on June 28, 1961, Glassman gave McCaffrey another $5,000 in exchange for a finished draft of the same document. Late in the afternoon of June 27, 1961, Glassman called Gorin to notify Gorin and Bergman that he had obtained the rough draft of the criminal action from McCaffrey. Gorin went to Glassman's office to pick up this memorandum, and shortly thereafter returned to his own office, where copies of the memorandum were typed and made available to Bergman. The record fails to contain any clear evidence as to the disposition of the remaining portion of the $28,500 cash after payment of $10,000 in bribes to McCaffrey, *251 but, upon the basis of the understanding that Gorin and Glassman were to share equally in the Bergman fee, it is hereby found as a fact that the remaining $18,500 was divided equally between them and that Gorin received $9,250 in respect thereof. The respondent has conceded that $5,000 of the cash received by Gorin from Bergman on June 27, 1961, was reported by Gorin on his 1961 income tax return. The $10,000 paid to McCaffrey was in fact turned over by him to the United States, and has been seized and retained by the United States. Representatives of the Boston Regional Counsel's office did not at any time here relevant make a bona fide recommendation against prosecution of Bergman for criminal violations of the Internal Revenue laws with respect to the taxable years 1955, 1956, 1957 and 1958, then under review. However, thinking that the Regional Counsel's office had reached this decision, Gorin undertook to disburse $12,500 of the funds deposited by him in the trustee account, as per the terms of his first contract with Bergman. A check for $7,500, dated June 28, 1961, was drawn on the trustee account, payable to the order of Sriberg and Glassman; a second check for $5,000, dated *252 June 29, 1961, was made payable to Paul Gorin. The latter check was deposited in Gorin's personal account and recorded on the same date on his books and records; it was later reported on his 1961 joint income tax return. After the arrest of Bergman on August 26, 1961, when it became obvious that a final decision of no prosecution in Bergman's case would not be forthcoming, Bergman demanded and received from Gorin a certified check dated August 29, 1961, for the remaining $29,000 in the account according to the terms of their second contract. The trustee account was thus closed on August 29, 1961. 318 On March 19, 1962, Gorin, Bergman, one Henry Grillo (an employee of the Internal Revenue Service Intelligence Division) and Glassman were convicted in the District Court of the United States for the District of Massachusetts of conspiring to commit an offense against the United States in violation of Title 18, U.S.C. section 371 and Gorin, Bergman and Glassman were also convicted of offering and giving money to Charles J. McCaffrey, an employee acting for and on behalf of the Treasury Department of the United States, with intent to influence his decision on *253 a matter pending before him as special assistant to the Regional Counsel, Internal Revenue Service, in violation of Title 18, U.S.C. section 201. On that date, Bergman was sentenced to be imprisoned for three years and to pay a fine of $5,000. Gorin was sentenced to be imprisoned for two years and to pay a fine of $5,000. Glassman and Grillo also received fines and prison sentences. All four defendants filed appeals with the Court of Appeals for the First Circuit. While this appeal was pending, on October 29, 1962 Bergman moved to dismiss his appeal and it was so ordered. On October 29 and 30, 1962, Bergman waived his rights against self-incrimination and submitted to questioning under oath by Assistant United States Attorneys and an Investigator of the Internal Revenue Service. On October 31, 1962, Bergman moved to stay execution of his sentence and the motion was allowed by agreement between the Assistant United States Attorney and Bergman's counsel. On November 13, 1962 Bergman moved to reduce his sentence, and on December 3, 1962, the Court reduced Bergman's sentence from three years imprisonment and a $5,000 fine to eighteen months imprisonment and a *254 $5,000 fine, and execution was stayed until January 4, 1963. On February 20, 1963 the convictions of Gorin, Glassman and Grillo were vacated and remanded by the Court of Appeals for the First Circuit. 313 F. 2d 641. At the subsequent trial the three defendants were found guilty and on September 17, 1964, the Court of Appeals for the First Circuit affirmed the District Court's judgments. Gorin, Glassman and Grillo all received prison sentences and fines. On September 12, 1961, Bergman and his wife, Nona, were indicted by the Grand Jury at New Haven, Connecticut, in four counts for income tax evasion for the years 1955, 1956, 1957 and 1958 in violation of Title 26, U.S.C. section 7201 and pleaded not guilty on September 25, 1961. On November 14, 1962, Bergman withdrew his plea of not guilty to count three of the indictment and entered a plea of guilty. On January 3, 1963, he was sentenced to twenty-one months imprisonment (to be served concurrently with the sentence imposed by the Federal District Court in Massachusetts), and fined $10,000 and costs. Counts one, two and four, and all counts against Nona Bergman, were dismissed. In connection *255 with the criminal charges pending against petitioner Paul A. Gorin, he incurred and paid legal expenses to his counsel, Francis J. Di Mento, in the amount of $10,250. The parties have agreed that these legal expenses constitute an allowable deduction in 1961 for Federal income tax purposes and that this deduction was not previously claimed on petitioners' Federal income tax return for the year ended December 31, 1961. A refund claim for the overpayment alleged by petitioners to result from said deduction was timely filed on August 23, 1965. In his notice of deficiency, the Commissioner determined that Gorin received professional fees in the amount of $28,500 which were not reported on petitioners' income tax return for the year 1961, and increased their taxable income accordingly. The Commissioner has since conceded that $5,000 of the $28,500 cash payment alleged by him to have been received by Gorin from Bergman in 1961 was reported by Gorin on his income tax return for 1961 and that the unreported income referred to in the notice of deficiency should therefore be reduced from $28,500 to $23,500. The Commissioner made two other adjustments reflected in his notice of deficiency, *256 agreed to by petitioners, one increasing income by $25.55, and the other decreasing income by $1,842.92, or a net adjustment decreasing income by $1,817.37. Opinion RAUM, Judge: The Commissioner originally charged Gorin with having received $28,500 cash from Bergman on June 27, 1961 which he failed to report as income. It was subsequently conceded that Gorin in fact did report $5,000 in respect of this alleged payment, and the principal question before us relates to the amount of income 319 properly attributable to Gorin in connection with the alleged payment of $28,500 in cash. The Commissioner now takes the position that Gorin is chargeable with $23,500 unreported income. At the outset we are faced with a sharp conflict in the evidence as to the amount of cash which Bergman in fact paid over on June 27, 1961. Gorin argues that it was $15,000, that $10,000 thereof was used by Glassman in the attempt to bribe McCaffrey, and that only $5,000 remained, which he (Gorin) reported on his return. Other evidence more convincingly establishes, and we have found as a fact, that Bergman paid $28,500. However, this was not all taxable income to Gorin. Gorin, Glassman and Bergman had *257 agreed upon a corrupt plan that involved bribing an Internal Revenue Service employee in order to prevent the criminal prosecution of Bergman for income tax fraud. All three were lawyers. To be sure, Bergman looked principally to Gorin as his attorney, but he knew that Glassman was associated with Gorin in the matter, and Glassman in fact took an active part in negotiating the amount and nature of the fee with Bergman and Gorin. Also, Bergman knew that a part of the fee would be used as a bribe, and it was for that reason that he paid a portion of the fee in cash for which he obtained no receipt. In the circumstances before us, it is plain that the $10,000 bribe included in the $28,500 may not properly be charged to petitioner as his income. Although Bergman may not have known how much of the cash was to be used for that purpose, he knew that at least a portion thereof was to be paid over to an employee of the Internal Revenue Service, and we are satisfied that in receiving the cash from Bergman, Gorin acted only as a conduit in respect of the $10,000 bribe. It was not his income. The situation as to the remaining $18,500 presents a more difficult question. The record is murky, *258 but taking into account the fact that Gorin and Glassman had agreed between themselves to share the total fee equally, we have found as a fact that Gorin received only $9,250, one-half of the remaining $18,500 as his own. There may be more to this case than meets the eye, and we make this finding without great confidence, but the record is highly unsatisfactory in critical respects and we must do the best we can with the materials before us. Our finding reflects our best judgment in the circumstances. Cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2). Since Gorin reported $5,000 cash received from Bergman on June 27, 1961, only $4,250 (the difference between $9,250 and $5,000) must be charged to him as unreported income. However, the stipulation of the parties sets forth that Gorin is entitled to a deduction of $10,250 for 1961 for certain legal expenses not deducted on his return and that there is another adjustment in the net amount of $1,817.37 decreasing his income still further. In the circumstances, there is no resulting deficiency, and it is therefore unnecessary to consider the additions to tax determined by the Commissioner. Decision will be entered under *259 Rule 50.